[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

No. 05-17125
Non-Argument Calendar

_____

BIA No. A73-788-054

DEYANIRA SUSA-VALENCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 28, 2006)**

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Colombian citizen and national Deyanira Susa-Valencia petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order denying her claim for asylum, 8 U.S.C. § 1158, withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and her claim for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). Susa-Valencia argues that the IJ's adverse credibility determination was not supported by substantial evidence, and that the IJ erred in denying asylum and withholding of removal. For the reasons set forth more fully below, we dismiss the petition in part and deny the petition in part.

## I. BACKGROUND

Susa-Valencia entered the United States on May 27, 2002. In October 2002, she applied for asylum, withholding of removal, and CAT relief alleging persecution by Squad # 50 of the FARC[1] due to her political beliefs and activism. Susa-Valencia alleged that, beginning in March 2001, she was subject to terrorist and military persecution and also threatened. In a statement submitted in support of her application, Susa-Valencia stated that she received threats via anonymous notes, telephone calls, and in person. Among the documents submitted in support of her application was a police report based on a compliant that she filed on

---

[1] The Revolutionary Armed Forces of Colombia.

February 14, 2002. According to the report, Susa-Valencia told the police that she was a housewife and had received phone calls at home by persons who said that they would kill her because she worked for a local politician, a House Representative from the Department of Quindio, and helped him make political proselytism. Susa-Valencia also submitted a certification from the mayor of Calarca, signed on February 20, 2002, which stated that she was threatened and declared a military objective by Squad #50 of the FARC, and that the mayor personally advised her to leave the country.

In January 2003, Susa-Valencia was issued a notice to appear, charging her with removability under INA § 237(a)(1)(B) for remaining in the United States for a time longer than permitted. During removal proceedings, Susa-Valencia conceded removability and requested asylum, withholding of removal, and CAT relief.

At the hearing on her application, Susa-Valencia testified that she was member of the Liberal Integration Movement and was the leader for one of six or seven groups within the organization. Her group conducted health brigades and recreational groups and collected school supplies for children. They would also help the peasants with their needs and help the youth so that they would not be recruited by the guerillas. At meetings, Susa-Valencia would speak to the youth about not joining the guerillas.

Susa-Valencia described four incidents involving the FARC. On March 30, 2001, she received a threatening phone call at her home from the FARC. On July 20, 2001, one of her group's meetings was disrupted by 15 or 20 people, who identified themselves as from Front 50 of the FARC. These people came screaming for her head and threatened her, but she was protected by the people who were present at the meeting. On September 25, 2001, two men approached Susa-Valencia as she was walking into her apartment and handed her an envelope that read Front 50 of the FARC. Susa-Valencia never opened the envelope. On February 14, 2002, she received a phone call at work. The caller threatened her with death if she did not leave the country.

Susa-Valencia explained that she did not put the dates of these incidents in her application because she was told that she could not write such a long story, and that she did not put them in her statement because she thought it would be too long. She explained that she told the police that she was a housewife because she had retired about two or three months before to see if she would be safer at home. Asked how she received a call at work when she had already retired, Susa-Valencia explained that "the dates aren't exactly the ones that I recall the most, because at that time, I was quite nervous." Susa-Valencia explained that the letter from the mayor was prepared because she went to see him in search of help. The mayor signed the certification as proof that she sought help from him and because she

wanted a certificate. Asked why she needed this evidence, Susa-Valencia testified that she wanted to let the mayor know what was happening to her and denied that she was already planning to come to the United States and apply for asylum.

When she arrived in the United States, Susa-Valencia used a marine visa, the purpose of which was to work on a floating merchant ship, that she obtained in Bogota with the help of a company. However, upon arriving in the United States, Susa-Valencia told the company that she was not going to work. She explained that this was because she was frightened of the ocean. However, she also stated that she knew she was not going to work on the ship because the visa was not legal for work on that ship, explaining that she meant that she had obtained the visa in order to get out of Colombia because she had been threatened. Susa-Valencia testified that she believed she would be killed if she returned to Colombia. She also stated that, as soon as she returned, she would continue working with the group because she liked participating in politics.

The IJ denied asylum, withholding of removal, and CAT relief.[2] Susa-Valencia appealed to the BIA, which affirmed the IJ without opinion.

---

[2] Susa-Valencia does not raise any challenge in her brief to the denial of CAT relief, thereby abandoning the issue. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003). Accordingly, this issue is not discussed further.

## II. DISCUSSION

Because the BIA summarily affirmed the IJ without opinion, we review the IJ's opinion. See Mendoza, 327 F.3d at 1284 n.1. We review factual determinations, including credibility determinations, using the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation and quotation marks omitted). We review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Id. To conclude that the IJ should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and quotation marks omitted). To the extent the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

In his oral decision the IJ initially referred to Susa-Valencia's testimony as "illogical and . . . inconsistent in significant parts," and, as a result, found her credibility "significantly diminished." However, the IJ further found that, "under the circumstances of this case, the lack of credibility of this respondent, and the absence of reliable supporting documents to support her case, . . . a reasonable person in [Susa-Valencia's] situation would not fear returning to Colombia for any

6

of the five statutory grounds." (Emphasis added). Based on this latter statement, we are not "left in the dark" as to whether or not the IJ found Susa-Valencia credible. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (citation and quotation marks omitted). We therefore consider whether the IJ's adverse credibility finding was supported by substantial evidence. In making this determination, the IJ pointed to inconsistencies both within Susa-Valencia's testimony and between her testimony and supporting documentation. The IJ also rejected Susa-Valencia's explanations for some of her actions as illogical. We readily conclude that substantial evidence supports the IJ's credibility finding.

Because the denial of asylum cannot be based solely on an adverse credibility finding if the applicant offered "other evidence of persecution," Forgue, 401 F.3d at 1287, we next consider whether the IJ's finding that Susa-Valencia was not eligible for asylum was supported by substantial evidence in the record.

We find that Susa-Valencia has not satisfied her burden of showing that the IJ's finding was not supported by substantial evidence. Her reliance on the telephonic death threat to establish past persecution fails because this threat does not "rise to the level of past persecution that would compel reversal of the IJ's decision." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). As to a well-founded fear of persecution, the IJ recognized that Susa-Valencia would understandably be concerned about returning if the attempt by the FARC to

7

harm her at the meeting was true. However, he rejected this testimony as not credible. Although Susa-Valencia claimed that she feared death if she returned, her willingness to continue the activities that caused her to come to the attention of the FARC because she liked politics supports the IJ's finding that she would not fear returning to Colombia on account of a protected basis. Because Susa-Valencia failed to present credible testimony or reliable documentary evidence, the record does not compel the conclusion that she had an objectively reasonable fear of persecution. Furthermore, the evidence of the FARC's activities in Colombia that Susa-Valencia cites to show that she could not reasonably relocate does not appear in the administrative record.[3] Because our review is limited by the administrative record, 8 U.S.C. § 1252(b)(4)(A), and Susa-Valencia failed to point to evidence in the administrative record, she cannot meet her burden to show that the record compels reversal of the IJ's finding that she could reasonably relocate.[4]

---

[3] Susa-Valencia also challenges the IJ's finding regarding her ability to reasonably relocate as erroneous on the ground that the relocation requirement is unconstitutional. Although brought as a constitutional challenge, Susa-Valencia essentially seeks to either not be required to show that she is unable to relocate, or to have the IJ's relocation finding reevaluated. Susa-Valencia never raised this claim before the BIA, which could have afforded her the relief she seeks on appeal. Due to her failure to exhaust administrative remedies, we lack jurisdiction over this claim. 8 U.S.C. § 1252(d)(1); Sundar v. I.N.S., 328 F.3d 1320, 1323 (11th Cir. 2003). Accordingly, Susa-Valencia's petition is due to be dismissed, in part, for lack of jurisdiction.

[4] We have recently held that the 1999 and 2000 U.S. Department of State's country reports on Colombia compel the conclusion that relocation in Colombia was not a viable option. Arboleda v. U.S. Att'y Gen., 434 F.3d 1220, 1224-25 (11th Cir. 2006) (citing Sepulveda, 401 F.3d at 1232 n.7). Even if we were to find that the 2003 country report does not provide substantial evidence to support the IJ's relocation finding, because Susa-Valencia could not demonstrate past persecution or a well-founded fear of persecution, this finding would not

Because Susa-Valencia cannot establish eligibility for asylum on the merits, she cannot meet the more stringent standard required for withholding of removal under the INA.[5] <u>Forgue</u>, 401 F.3d at 1288 n.4.

In light of the foregoing, we dismiss the petition in part for lack of jurisdiction and otherwise deny the petition.

**DISMISSED IN PART AND DENIED IN PART.**

---

change the outcome of this case. <u>See</u> <u>Sepulveda</u>, 401 F.3d at 1232 n.7.

[5] We reject the government's contention that Susa-Valencia did not exhaust her administrative remedies as to this claim by failing to sufficiently raise it before the BIA.